**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
                              :
ROBERT D. CORWIN,             :
                              :        Civil Action No.
              Plaintiff,      :        05-4239 (NLH)
                              :
        v.                    :
                              :
                              :        **OPINION**
BRANDYWINE VALLEY FRIENDS     :
OF OLD TIME MUSIC, INC.,      :
SALEM COUNTY COOPERATIVE      :
FAIR ASS'N, INC., JOHN DOES   :
1-2 (fictitious names of      :
unknown defendants) ABC and   :
XYZ (fictitious names of      :
unknown companies),           :
                              :
              Defendants.     :
                              :
```

**Appearances:**

EUGENE D. MCGURK, JR.
RAYNES, MCCARTY, BINDER, ROSS & MUNDY, ESQS.
116 WHITE HORSE PIKE
HADDON HEIGHTS, NJ 08035
*Attorney for Plaintiff Robert D. Corwin*

SUSANNA J. MORRIS
BUDD LARNER, PC
1939 ROUTE 70 EAST
SUITE 100
CHERRY HILL, NJ 08003
*Attorney for Defendant Brandywine Valley Friends of Old Time*
*Music, Inc.*

ARTHUR E. DONNELLY
DENISE L. WERNER
ROMANDO TUCKER ZIRULNIK & SHERLOCK
MARLTON EXECUTIVE PARK I,, SUITE 120
701 ROUTE 73 SOUTH
MARLTON, NJ 08053
*Attorneys for Defendant Salem County Cooperative Fair*
*Association, Inc.*

**HILLMAN, District Judge**

Before the Court are motions for summary judgment filed by defendant Brandywine Valley Friends of Old Time Music, Inc. ("Brandywine Music") and defendant Salem County Cooperative Fair Association, Inc. ("Salem Fair").  Brandywine Music's motion for summary judgment based on New Jersey's Charitable Immunity Act ("Charitable Immunity Act" or "Act") is granted and Salem Fair's motion for summary judgment based on the Charitable Immunity Act is denied.  Bandywine Music's motion for summary judgment based on New Jersey's public use exception doctrine is denied as moot.

## I.   JURISDICTION

Plaintiff Robert Corwin is a citizen of the state of Pennsylvania, defendant Brandywine Music is a Delaware corporation with its principal place of business in Delaware, and defendant Salem Fair is a New Jersey corporation with its principal place of business in New Jersey.  This Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## II.   BACKGROUND

The underlying facts are not in dispute.  Brandywine Music is a Delaware nonprofit corporation and is exempt from federal tax under Internal Revenue Code § 501(c)(3).  Brandywine Music is organized solely for the educational purpose of promoting and

preserving "bluegrass" or "old time" music.  Since 1990, it has organized the Delaware Valley Bluegrass Festival held at Salem Fair's fairgrounds in Woodstown, New Jersey.  The festival is held over several days and Brandywine Music charges a fee for admittance to the festival.  It also holds bluegrass festivals in other states.

Salem Fair is a New Jersey nonprofit corporation and is exempt from federal tax under Internal Revenue Code § 501(c)(3). Salem Fair is organized solely to prepare and conduct fairs and exhibits in Salem County, New Jersey, for the purpose of improving the agriculture in the county through educational and competitive exhibits.  Salem Fair's by-laws allow it to purchase, lease or rent real estate or personality or borrow money in order to effectuate its educations goals.  Salem Fair is the owner of the fairgrounds in Woodstown, New Jersey.  It rented the fairgrounds to Brandywine Music for $9,216.00 to hold the Bluegrass Festival from August 29-31, 2003.

While at the festival on August 30, 2003, plaintiff Robert Corwin suffered injuries when he fell while walking down a stage ramp from one the stages set up by Salem Fair and used for musical acts at the Festival.  Mr. Corwin was a freelance photographer and intended to sell his photographs to the magazine Bluegrass Now and other magazines.  Mr. Corwin was granted "media" access and did not pay an admittance fee to the festival.

3

Before the Court are three motions for summary judgment. Both defendants filed motions for summary judgment arguing that they qualify for immunity under New Jersey's Charitable Immunity Act, since they are nonprofit entities organized exclusively for educational purposes; they were promoting their educational objectives and purposes at the time of plaintiff's injury; and plaintiff was a beneficiary of their charitable works.  In addition, Brandywine Music filed a second motion for summary judgment arguing that under New Jersey's "public use exception" doctrine, it did not owe a duty of care to plaintiff and, therefore, his claim of negligence should be dismissed against Brandywine Music.

### III.  DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving

party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.  Choice of Law**

As a District Court in New Jersey sitting in diversity, we apply New Jersey's choice of law rules.  See Aetna Sur. and Cas. Co. v. Sacchetti, 956 F.Supp. 1163, 1168(D.N.J. 1996).  New Jersey applies the "governmental-interests analysis" to determine which state's laws apply.  See P.V. v. Camp Jaycee, 922 A.2d 761, 763 (N.J. Super. Ct. App. Div. 2007)(citing Rowe v. Hoffman-La Roche, Inc., 917 A.2d 767 (N.J. 2007).  First, it must be determined whether an "actual conflict" exists.  Id. (other citations omitted).  If an actual conflict exists, then the Court must determine the interest each state has in the dispute and "apply the law of 'the state with the greatest interest in governing the issue.'"  Id. (other citations omitted).

Here, plaintiff is domiciled in Pennsylvania.  Brandywine Music is a Delaware corporation and Salem Fair is a New Jersey corporation.  The accident occurred in New Jersey and the events that gave rise to the accident occurred in New Jersey.  An actual conflict exists because New Jersey has a statute that grants limited immunity to charitable organizations and Pennsylvania and Delaware do not.  See N.J.S.A. 2A:53A-7;[1] Flagiello v.

---

[1]  See N.J.S.A. 2A:53A-7 states in pertinent part;

a.  No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes ... shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the

<u>Pennsylvania Hosp.</u>, 208 A.2d 193, 207-08 (Pa. 1965)(abolishing Pennsylvania's judicially created doctrine of charitable immunity); <u>Durney v. St. Francis Hosp.</u>, 83 A.2d 753, 758 (Del.Super. 1951) (rejecting the application of the doctrine of charitable immunity under Delaware Law).  Therefore, it must be determined which of these states has the greatest interest in applying its law.  In assessing a state's interest in tort cases, there are four factors that must be considered: "the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered." <u>Camp Jaycee</u>, 922 A.2d at 765 (quoting <u>Fu v. Fu</u>, 733 A.2d 1133 (N.J. 1999)).  Here, the injury occurred in New Jersey; the conduct causing the injury occurred in New Jersey; the plaintiff resides in Pennsylvania, Brandywine Music is a Delaware corporation and Salem Fair is a New Jersey corporation; and the relationship is centered in New Jersey where the plaintiff

---

> negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.

traveled to attend the festival.

Although it appears that New Jersey has the most contacts in this litigation, we turn to New Jersey law as to the weight to be accorded to each of the above factors.  In Butkera v. Hudson River Sloop "Clearwater" Inc., 693 A.2d 520 (N.J.Super.Ct. App.Div. 1997) and Camp Jaycee, the Appellate Division of the New Jersey Superior Court was faced with the issue of what state's law to apply where the defendant corporation was a nonprofit or charitable organization seeking application of New Jersey's Charitable Immunity Act.  In Butkera, the court cautioned against applying too much weight to the situs of the accident. 693 A.2d at 557.  Approximately ten years later, in Camp Jaycee, the court stated "'with only rare exceptions, the local law of the state where conduct and injury occurred will be applied' to determine an actor's liability." 922 A.2d at 765 (quoting Fu 733 A.2d at 1133); Restatement (Second) of Conflict of Laws § 145, comment d (1971)).

Given the apparent conflict of case law concerning the proper weight to ascribe to the location of the accident, we must try to anticipate how the New Jersey Supreme Court will rule on this issue.[2]  If it affirms the decision in Camp Jaycee, then New Jersey law clearly applies since it is the location of the

---

[2]   Camp Jaycee was granted certification by the New Jersey Supreme Court shortly after the lower case was decided but, as of the date of this Opinion, has not yet scheduled oral argument.

accident and the place where the events leading up to the accident occurred.  Looking at case law outside of the charitable immunity context, however, we anticipate that the Supreme Court would not weigh the situs of the accident so heavily.

In Fu v. Fu, 733 A.2d 1133, 1136 (N.J. 1999), the New Jersey Supreme Court was faced with a conflicts of law analysis between New York and New Jersey pertaining to an automobile accident that occurred in New York involving New Jersey residents.  In particular, the court had to decide whether to apply New Jersey's common law vicarious liability rule, or Section 388 of the New York Vehicle and Traffic Law.[3]  The court was clear that "[i]n tort cases, New Jersey has rejected the traditional rule of *lex loci delicti*, pursuant to which the local law of the place where the wrong occurred governed all substantive issues."  Id.  However, in applying New Jersey's "governmental-interest" approach, the court commented that "[i]n personal injury cases, 'the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law.'"  Id. at 1142 (citing the same text from comment d of § 145 of the Restatement as relied upon in Camp

---

[3]   Under New Jersey common law, the owner of a motor vehicle is not liable for the negligence of the vehicle's operator unless the operator is acting as the owner's agent or employee. Conversely, § 388 of the New York Vehicle and Traffic Law imposes vicarious liability on a vehicle's owner for the negligence of the vehicle's operator.

Jaycee).  The court explained that "a state has an obvious
interest in regulating the conduct of persons within its
territory and in providing redress for injuries that occurred
there" but that "[t]he place of injury becomes less important
where it is simply fortuitous." Id.

Nevertheless, the court did not simply rely on the place of
the accident but analyzed the policy considerations behind each's
states' laws to determine which state had the greater interest in
having its law applied.  Id. at 1138-1150.  Ultimately, the court
found that "[a]lthough New Jersey's common law plainly shields
automobile owners from liability for permissive use of their
vehicles in this State, New Jersey does not have a governmental
interest in affording that same protection to its residents for
tortious conduct out of state." Id.  Consequently, the court held
that New York law applied.

Following the direction of the New Jersey Supreme Court as
outlined in Fu, we look behind the policies governing each
state's law regarding charitable immunity to determine what state
has the greatest interest.  "New Jersey's interest in applying
its Charitable Immunity Act is the 'preservation of private
charitable contributions for their designated purposes.'" Camp
Jaycee, 922 A.2d at 764 (citations omitted).  New Jersey's
interest, however, is limited to negligence claims and to persons
who are beneficiaries of the works of the nonprofit corporation.

10

Id.  Conversely, Pennsylvania's interest is "... in subjecting
charities to the same rules of tort liability as other private
entities... payment of an obligation to the person injured and
... warning that justice and the law demand the exercise of
care."  Id. (citing Flagiello, 208 A.2d at 201 (other citation
omitted)).  Delaware, not unlike Pennsylvania, also expressed the
view that charitable organizations should be liable for their
torts.  See Durney, 83 A.2d at 758 (stating, "I am convinced that
the general principle which makes every person responsible for
his own legally careless action, should apply with equal force to
charitable corporations").

        Pennsylvania's only contact to this litigation is that it is
the residence of the plaintiff.  Although Pennsylvania does have
an interest in permitting its residents recovery for their
injuries, a general notion of allowing injured plaintiffs to
recover damages is not so strong an interest against New Jersey's
interest codified by statute limiting the liability of charitable
organizations.  Further, Pennsylvania's charitable immunity
doctrine was abolished due to concerns about Pennsylvania
charities exercising a proper degree of care, and not out of
concerns over plaintiffs being compensated.  See Flagiello v.
Pennsylvania Hosp., 208 A.2d at 197 (stating that ("[o]ne of
those inescapable obligations is that [the hospital/charity] must
exercise a proper degree of care for its patients, and, to the

extent that it fails in that care, it should be liable in damages
as any other commercial firm would be liable"). Therefore,
Pennsylvania's interests are not paramount and its law does not
apply.

The remaining states are Delaware and New Jersey. Like
Pennsylvania, Delaware does not limit the liability of its
charitable organizations. Defendant Brandywine Music is a
Delaware charitable organization while defendant Salem County is
a New Jersey charitable organization. It seems clear that New
Jersey has an interest in protecting its charitable
organizations. The issue here is whether New Jersey has an
interest in protecting foreign charitable organizations that do
charitable works in New Jersey.

This question was addressed by the court in this district in
Seiderman v. American Institute for Mental Studies, 667 F. Supp.
154, 156 (D.N.J. 1987).[4] In Seiderman, plaintiff brought an
action as guardian for his son, a mentally handicapped patient,
for injuries the son sustained when he fell from a window while
residing at the American Institute for Mental Studies ("AIMS")

---

[4]  In Butkera, the Appellate Division of the Superior Court
of New Jersey criticized the decision in Siederman "... to the
extent it relied on the situs of the accident as the critical
factor in the governmental interest analysis." 693 A.2d at 524.
The criticism does not extend to the result or the analysis of
New Jersey's interest regarding its Charitable Immunity Act.
Rather, it supports this Court's reliance on Fu that the location
of the accident should not be given undue weight.

located in New Jersey and managed by Elwyn. Id. AIMS was a New Jersey nonprofit corporation and Elwyn was a Pennsylvania nonprofit corporation. Id.

Applying New Jersey choice of law rules, the court analyzed each state's interest in the litigation. The court noted that New Jersey's Charitable Immunity Act "... does not indicate whether its reach was intended to be limited to domestic corporations." Id. The court found that New Jersey would not have an interest in applying its law where New Jersey residents were injured from the tortious acts of out of state charitable corporations that operated outside of New Jersey and any contact with New Jersey occurred because the New Jersey residents "voluntarily availed themselves" of the out of state corporation's services. Id. (relying on Feniello v. University of Pennsylvania Hospital, 558 F.Supp. 1365 (D.N.J. 1983)(rejecting application of New Jersey law where New Jersey resident injured in Pennsylvania by Pennsylvania charity even though Pennsylvania charity had close connections to New Jersey and served New Jersey residents); Prince v. Trustees of University of Pennsylvania, 282 F. Supp. 832 (E.D.Pa. 1968)(finding Pennsylvania law applied where New Jersey plaintiff brought action against Pennsylvania charity for injuries sustained in Pennsylvania); Wuerffel v. Westinghouse Corp., 372 A.2d 659 (N.J. Super. Law Div. 1997)(applying Pennsylvania law

13

where New Jersey resident was student at Drexel, a Pennsylvania nonprofit corporation, and injured in New Jersey as part of his educational training because Pennsylvania had greater interest in holding its corporations accountable for their negligent conduct)).

The court, however, viewed the relationship between Elwyn and AIMS to present a different situation.  They found that Elwyn had a contract with AIMS and conducted its activities in the State of New Jersey.  <u>Id.</u> at 158.  The court stated:

> ... we see no reason why the accident of
> having been incorporated in Pennsylvania
> should affect Elwyn's immunity status with
> respect to charitable functions that it
> performed in New Jersey.  We agree with
> defendants that New Jersey has an interest in
> extending the protection of the charitable
> immunities statute to such foreign
> corporations, as well as domestic nonprofit
> charitable institutions, in order to
> encourage all of them to operate within the
> state for the benefit of New Jersey
> residents, and to protect them from
> potentially devastating damages verdicts. ...
> we find that New Jersey's interest in
> encouraging and supporting charitable
> nonprofit activities within the state
> outweighs any interest that Pennsylvania
> might have in holding one of its corporations
> accountable for conduct occurring outside of
> that state's boundaries.

<u>Id.</u>  The court held that New Jersey had the most significant contacts and that under New Jersey's governmental interest choice of law test, New Jersey's law applied.

This case is factually similar to <u>Seiderman</u>.  Here,

14

Brandywine Music is a Delaware nonprofit corporation that contracted with Salem Fair, a New Jersey nonprofit corporation, to provide services in New Jersey.  A relationship arose between Brandywine Music and Salem Fair from the contract since Brandywine Music used the fair grounds and facilities of Salem County in providing its services.  Salem Fair fulfils its charitable mission and benefits monetarily by renting out the fair grounds.  Like the Pennsylvania nonprofit corporation in Seiderman, here, the foreign nonprofit corporation worked closely with the New Jersey nonprofit corporation (which is clearly an intended beneficiary of the Charitable Immunity Act), in New Jersey, and benefitted New Jersey residents.  In addition, here, the plaintiff is a Pennsylvania resident.  New Jersey has a greater interest in protecting its nonprofit corporations doing activities in New Jersey than it does in providing a method of recovery for out of state plaintiffs.

Under the facts in this case, where the foreign nonprofit corporation provides services in New Jersey and works with and benefits a New Jersey nonprofit corporation that operates in New Jersey as well as benefits New Jersey residents, and an out of state plaintiff is injured participating in the nonprofit corporations activities in New Jersey, New Jersey's interest in supporting charitable activities within the state outweighs any interest Delaware might have in holding Brandywine Music

accountable for its alleged negligent conduct outside of Delaware toward a non-Delaware resident.  Therefore, under New Jersey's governmental interest approach, New Jersey has the greater interest in having its law applied and the Charitable Immunity Act extends to the foreign corporation.

### C.  New Jersey's Charitable Immunity Act

Finding that New Jersey law applies and that the Charitable Immunity Act is an available defense to both defendants, we turn to application of the Act to determine whether defendants qualify.  "Under Section 7a of the Act, an entity qualifies for charitable immunity when it '(1) was formed for non-profit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works.'"  Bieker v. Community House of Moorestown, 777 A.2d 37, 42 (N.J. 2001) (citing Hamel v. State, 728 A.2d 264 (N.J.Super.App.Div. 1999); Loder v. St. Thomas Greek Orthodox Church, 685 A.2d 20 (N.J.Super.App.Div. 1996) for the proposition that "in litigation concerning the Act, the focus is on whether the organization is a charitable association, and whether the injured plaintiff is a 'beneficiary' of its charitable works.")

The record shows that Brandywine Music was formed and is organized for nonprofit educational purposes, and was promoting

16

its charitable objectives and purposes at the time that Mr. Corwin was injured.  The parties dispute whether plaintiff was a "beneficiary" at the time of his accident.  Defendants argue that Mr. Corwin attended the festival voluntarily and was not an employee or volunteer of either defendant.  Mr. Corwin took photographs at the festival that he later sold for his own profit to bluegrass-oriented magazines.  Also, Mr. Corwin spent time at the festival talking with various musicians and others thereby enjoying the benefits of the festival.

Mr. Corwin maintains that he was not a beneficiary.  He states that he did not pay an admittance fee and was granted media credentials by Brandywine Music for the purpose of taking photographs of performers at the festival which were later published in various magazines.  Mr. Corwin argues that the publication of these photographs provided media coverage and advertising which was a benefit conferred, not received, and that under New Jersey law a volunteer who confers a benefit on the nonprofit is not considered a beneficiary.

In Devries v. Habitat for Humanity, 676 A.2d 152, 154 (N.J.Super.App.Div. 1996), aff'd DeVries v. Pterson Habitat for Humanity, 689 A.2d 142 (N.J. 1997), a volunteer for Habitat for Humanity, a nonprofit corporation, was injured while providing electrical work on the second floor of a unit.  The court found that the plaintiff was not a beneficiary as defined by the

17

statute "despite the benevolent impulses which prompted his bestowal of benefactions upon others" and that the nonprofit was not entitled to immunity.  Id. at 159.  In doing so, the court relied on the two-part test outlined in Lindroth v. Christ Hospital, 123 A.2d 10 (N.J. 1956) to determine whether the plaintiff was a beneficiary: "(1) did the injury occur while the organization was engaged in its charitable works, and (2) was the injured party a direct recipient of those works."  Id. at 156. Defendants argue that Mr. Corwin was a direct recipient of their charitable works and, therefore, a beneficiary.

This case is factually distinguishable from DeVries.  Mr. Corwin was not a volunteer for Brandywine Music and he did not directly assist the nonprofit in its activities at the festival. Mr. Corwin was a freelance photographer who took pictures at the festival that he later sold for his own personal profit. Although Brandywine Music may have indirectly benefitted from Mr. Corwin's pictures, and by granting him media access and waiving the entrance fee recognized that indirect benefit, his presence at the festival was more of a benefit to him than it was to Brandywine Music.  In addition, Mr. Corwin benefitted from being at the festival and enjoying its sights and sounds, a right granted to him for free.  On balance, Mr. Corwin was both a direct and indirect recipient of the benefits of Brandywine Music's charitable works and, therefore, Brandywine Music is

18

entitled to charitable immunity.  See N.J.S.A. 2A:53A (which

provides in relevant part: "No nonprofit corporation...shall...

be liable to respond in damages to any person who shall suffer

damage from the negligence of any agent or servant of such

corporation, society or association, where such person is a

beneficiary, *to whatever degree*, of the works of such nonprofit

corporation, society or association" (emphasis added)).

      Applying the Lindroth test to Salem Fair produces a

different result.  With regard to Salem Fair, the record shows,

as with Brandywine Music, that it was formed and is organized for

nonprofit purposes.  However, unlike Brandywine Music, a question

arises as to whether Salem Fair was promoting its objectives and

purposes at the time of the injury to plaintiff.[5]  According to

---

      [5]  Plaintiff argues that summary judgment should be denied
because it is currently unknown if the income Salem Fair derives
from for-profit entities for rental of the fairgrounds outweighs
income it derives from nonprofit entities; and if it receives
more income from for-profit entities then Salem Fair's "dominant
use" is no longer charitable and it should be denied immunity.
See Bieker, 777 A.2d at 45 (stating "[o]nly if rentals by for-
profit entities have become a dominant use should [the nonprofit]
be denied immunity under the Act").  This case involves a
different issue than in Beiker.  In Beiker, because the nonprofit
was a community house and its *only* charitable service was to
provide space to other entities, how much it rented to for-
profits was important.  In this case, Salem Fair provides
charitable services and programs.  While the renting of the
fairgrounds promotes its charitable purpose in the general sense
that it provides some income, renting property is not the overall
charitable purpose of the organization.  The real issue regarding
Salem Fair is not how much it collects in rental income but
whether the act of renting the fairgrounds for an unrelated
musical festival is considered being "engaged in its charitable
works." See Lindroth, 123 A.2d at 13-14.

Salem Fair's by-laws, the purpose of the organization is "[t]o prepare for and to conduct Fairs and Exhibits in Salem County and thereby to improve the condition of agriculture and livestock, horticulture and household arts through educational and competitive exhibits."  The ability of Salem Fair to rent or lease property is to carry "into effect the purposes of the corporation."  Salem Fair clearly has the ability and permission to rent out its fairgrounds in order to raise money.  However, the act of renting the fairgrounds is not an activity where Salem Fair is "engaged in its charitable works."  In other words, the renting of the fairgrounds is not part of the charitable work, but is a means to a charitable end.  Mr. Corwin was injured at Brandywine Music's Bluegrass Festival; he was not injured at Salem Fair's annual county fair.  As such, Salem Fair was not engaged in its charitable works at the time of Mr. Corwin's injury and, therefore, Mr. Corwin was not a beneficiary of Salem Fair's charitable works.  See N.J.S.A. 2A:53A (which provides in relevant part that "... such immunity from liability shall not extend to any person...where such person is one *unconcerned in and unrelated to and outside of the benefactions* of such corporation, society or association" (emphasis added)).  Stated differently, Mr. Corwin photographed bluegrass musicians: it is nonsensical to suggest that he was a "direct" recipient of Salem Fair's efforts to promote Salem County agriculture and livestock.  See Lindroth, 123 A.2d at 13-14.  Thus, Salem Fair is not immune

20

under the Charitable Immunity Act and its motion for summary
judgment is denied.

## IV.   CONCLUSION

For the foregoing reasons, defendant Brandywine Music's
motion for summary judgment concerning the application of New
Jersey's Charitable Immunity Act is granted; defendant Salem
Fair's motion for summary judgment concerning the application of
New Jersey's Charitable Immunity Act is denied; and Brandywine
Music's motion for summary judgment on the application of New
Jersey's public use exception doctrine is denied as moot.[6]


                              s/Noel L. Hillman
                              NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

---

[6]   Since Brandywine Music is immune under the Charitable
Immunity Act, and thereby dismissed from this case, we do not
address the merits of the application of New Jersey's public use
exception.  See Borough of Fort Lee v. Port Authority of New York
and New Jersey, No. 87-1238, 1988 WL 24146, at *1 (D.N.J.
1988)(stating "[b]ecause this court is persuaded by defendants'
first argument, the second argument becomes moot and this opinion
does not address the merits of such.").